Andrea Campbell Davison (VSB No. 78036)
BEAN, KINNEY & KORMAN, P.C.
2311 Wilson Blvd, Suite 500
Arlington, Virginia 22201
(703) 525-4000

*Counsel for Heather Kiriakou*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re: | |
| JOHN KIRIAKOU, | Case No. 20-10934-KHK |
| Debtor. | Chapter 7 |

**HEATHER KIRIAKOU'S OBJECTION TO DEBTOR'S**
**MOTION TO CONVERT TO CHAPTER 13**

Heather Kiriakou ("Ms. Kiriakou"), by counsel, files this Objection to Debtor's Motion to Convert to Chapter 13 [Docket No. 36]. In support, Ms. Kiriakou states as follows:

**BACKGROUND**

1.  On March 27, 2020, the Debtor filed the above-captioned chapter 7 bankruptcy case. Donald F. King was appointed Chapter 7 Trustee (the "Chapter 7 Trustee") and is duly acting in such capacity.

2.  On April 15, 2020, the Debtor filed his initial Schedules, Statement of Financial Affairs and Means Test Calculation [Docket No. 21].

3. On April 23, 2020, the Chapter 7 Trustee conducted the §341(a) meeting of creditors, the date first set for such meeting. On April 24, 2020, the Chapter 7 Trustee issued a notice of no distribution to creditors [Docket No. 24].

4. After the §341(a) meeting of creditors, the Debtor amended his Schedules, Statement of Financial Affairs and Chapter 7 Means Test several times. Initially, he amended his schedules to, *inter alia*, add certain previously undisclosed assets and income streams and to increase his alleged expenses and allowed deductions to feign Chapter 7 eligibility without presumed abuse [Docket Nos. 26, 27].

5. On May 16, 2020, the Clerk of Court issued statement of presumption of abuse under §707(b) [Docket No. 21].

6. On May 18, 2020, Ms. Kiriakou filed a Complaint seeking a determination of non-dischargeability of certain domestic support obligations. Adv. Proc. No. 20-01037.

7. On May 25, 2020, Ms. Kiriakou filed a Motion for Relief from Stay seeking authority from the Court to pursue nonpayment of certain domestic support obligations in state court and to defend herself against Defendant's (undisclosed) appeal of a final custody order [Docket No. 30]. The Debtor filed an untimely response on June 14, 2020 [Docket No. 39]. The Court has set a hearing on the Motion for Relief from Stay for July 15, 2020.

8. On June 11, 2020, the Debtor filed his motion to convert this case to a case under Chapter 13 [Docket No. 36].

9. On June 12, 2020, the Debtor again amended his schedules [Docket No. 37]. Therein, among other changes, the Debtor disclosed causes of action against Ms. Kiriakou, Northrup Grumman, and John Bamford, Arlington County police detective, pending in the District Court for the Eastern District of Virginia (Case No. 1:20-cv-00662) (the "Federal

Complaint"). ¹  A true and correct copy of the Federal Complaint is attached hereto as <u>Exhibit A</u>. Indeed, the Federal Complaint had been filed in District Court <u>earlier that day</u> though the causes of action were not previously disclosed on the Debtor's schedules.  The Debtor has not claimed an exemption in any claims contained in the Federal Complaint.  *See* Schedule C.

10. In all iterations of the Debtor's filed Form 122A-2 – Chapter 7 Means Test Calculation, the Debtor has checked "No" in Paragraph 36, asking "Are you eligible to file a case under Chapter 13?"  *See* Docket No 21, 26, 27.

## APPLICABLE LAW

11. The Debtor's Motion to Convert references §706(a), which provides that a debtor "may" convert a chapter 7 case to chapter 13 "at any time" so long as the case has not been previously converted.  11 U.S.C. §706(a).  This right is not absolute.  Presented with this precise question, the Supreme Court of the United States in *Marrama v. Citizens Bank of Massachusetts*, 549 U.S. 365 (2007), held that a debtor's right to convert a case from chapter 7 to chapter 13 may be forfeited by the debtor's bad faith or fraud.

12. In *Marrama,* a Chapter 7 debtor misrepresented facts about his largest asset, his principal residence, in an attempt to shield it from his creditors.  *Marrama*, 549 at 368.  When the Chapter 7 trustee indicated an intent to recover the property for the estate, the debtor filed a notice of conversion to Chapter 13, which was treated as a motion to convert.  *Id.* at 369.  In rejecting the debtor's argument that he had an absolute right to convert his case from Chapter 7 to Chapter 13 under the language of §706(a), the Supreme Court found that such right is reserved for "honest but unfortunate" debtors who desire to repay their creditors "should they acquire the

---

[1] The Federal Complaint asserts claims of violation of constitutional rights, malicious prosecution, defamation and intentional infliction of emotional distress.  All of the alleged acts forming the basis of these claims occurred pre-petition in 2018 and 2019.  The underlying facts described in the Federal Complaint are largely those which gave rise to the Arlington County Circuit Court's grant of a family abuse protective order in favor of Ms. Kiriakou against the Debtor.

means to." *Id.* at 374. It was within the Bankruptcy Court's power, the Supreme Court determined, to prevent abusive litigation practices and deny conversion of the case of a debtor who, due to his bad faith conduct, would be subject to having his hypothetical Chapter 13 case dismissed for cause under §1307(c). *Id.* at 373.

13. Applying *Marrama*, a wide range of bad acts by a debtor have been deemed sufficiently abusive as to cause a court to sustain an objection to a request to convert. Courts in this circuit have found, specifically, that misrepresentation of a pre-petition cause of action is sufficient evidence of bad faith and cause to deny a motion to convert from chapter 7 to chapter 13. *See In re Dale*, 610 B.R. 524, 533 (Bankr. E.D.N.C. 2019); *see also In re Waters*, Case No. 05-08923, 2006 Bankr. LEXIS 5219 (Bankr. E.D.N.C. 2006) (finding chapter 7 debtor's failure to disclose pre-petition lawsuit so recklessly negligent as to find bad faith and deny motion to convert to Chapter 13).

14. Both the District Court for the Eastern District of Virginia and this Court have acknowledged the binding precedent of *Marrama* and have applied its ruling in the similar context of a chapter 13 debtor's request for a voluntary dismissal. *See In re Mitrano*, 472 B.R. 706 (E.D.Va. 2012) (relying on the Supreme Court's recognition that a debtor may forfeit some of his rights under the Bankruptcy Code for bad faith or fraud in denying a chapter 13 debtor's request for voluntary dismissal); *Gorman v. Abebe*, Case No.1:12-cv-125, 2012 U.S. Dist. LEXIS 181628 (E.D.Va. May 21, 2012); *In re Criscuolo*, Case No. 09-14063-BFK, 2014 Bankr. LEXIS 2138 (Bankr. E.D.Va. May 12, 2014).

## ARGUMENT

15. This Debtor is neither honest nor unfortunate, and has shown significant bad faith, warranting denial of his request to convert. Specifically, the Debtor (a) concealed pre-petition

4

causes of action which, if the Debtor is to be believed, would constitute the largest non-exempt asset of his Chapter 7 estate; (b) mischaracterized clear domestic support obligations in an attempt to discharge them under chapter 7 or pay minimally under chapter 13; and (c) filed recklessly inaccurate schedules and statements under oath, and which gave rise to a presumption of abuse under Chapter 7. Ms. Kiriakou avers that the Debtor's desire to overcome any or all of these circumstances provide the Debtor with sufficient, albeit sinister, motivation to seek to convert his case. *See Waters*, 2006 Bankr. LEXIS, *7 ("Chapter 13 is not a refuge for debtors when there are adverse consequences in Chapter 7. Cases must be converted to Chapter 13 in good faith and with the intention of repaying creditors.") Instead, the Court should find that the Debtor has engaged in bad faith conduct and deny his motion to convert.

A. Concealment of the Causes of Action in the Federal Complaint

16. The Debtor unquestionably concealed from the Chapter 7 Trustee and other interested parties the claims contained in the Federal Complaint. The Debtor waited until after the Federal Complaint was filed to amend Schedule A/B to list pre-petition causes of action (with a District Court case number) against Ms. Kiriakou, Northrup Grumman and John Bamford with "damages as proven at trial." *See* Docket No. 37, Schedule A/B ¶30.

17. The Federal Complaint is 31 pages long. It contains 18 counts and lists two attorneys of record. There is no colorable argument that the Federal Complaint was formulated, filed and disclosed in the bankruptcy case on the same day. It is evident that the Federal Complaint had been in the works for some time and was very intentionally concealed in the Debtor's first three versions of his bankruptcy schedules each submitted by the Debtor under oath. The withholding of such information is not merely negligent, it is criminal. *See* 18 U.S.C. § 152.

18.     Each claim contained in the Federal Complaint arises out of alleged conduct in 2018 and 2019.  *See* Federal Complaint. Accordingly, these pre-petition claims became property of the Chapter 7 bankruptcy estate on the Petition Date.  11 U.S.C. §541(a)(1); *In re Bogdan*, 414 F.3d 507, 512 (4th Cir. 2005).  A Chapter 7 debtor relinquishes control over assets of the bankruptcy estate, including legal claims, to the Chapter 7 trustee and the Chapter 7 trustee <u>alone</u> has standing to pursue such claims.  *Haydu v. Tidewater Cmt. Coll.*, 268 F. Supp. 3d 843, 846 (E.D. Va. 2017).  A Chapter 7 debtor may only pursue a claims that belong to the bankruptcy estate if and when the Chapter 7 trustee abandons them pursuant to §554.  *See Canterbury v. J.P. Morgan Acquisition Corp.*, 958 F. Supp. 2d 637, 649-50 (W.D. Va. 2013).

19.     Though the Chapter 7 trustee in this case filed a report of no distribution, the trustee may only abandon <u>scheduled</u> assets; unscheduled assets remain property of the estate until actually abandoned.  *Id.* at 650 ("It is settled law that unless and until a cause of action, contingent or matured, is properly scheduled, and subsequently abandoned, the claim remains property of the bankruptcy estate…and the debtor lacks standing to pursue the claim"); *see also Yarid v. Ocwen Loan Servicing, LLC*, Case No. 3:17-cv-484, 2018 U.S. Dist. LEXIS 128926, *7 (E.D.Va. July 31, 2018); *In re DeWayne*, Case No. 18-02163, 2018 Bankr. LEXIS 2580, *9 (Bankr. D.S.C., Aud. 24, 2018).

20.     The Debtor's standing to file the Federal Complaint is not at issue here and will ultimately fall to the District Court to determine.  But, even paltry diligence on the part of the Debtor's counsel would have revealed that, in the Fourth Circuit, pre-petition causes of action in a Chapter 13 case are generally vested in both a Chapter 13 debtor and the Chapter 13 trustee. *Wilson v. Dollar General Corp.*, 717 F. 3d 337, 339 (4th Cir. 2013).  If this discovery prompted the Debtor's motion to convert this case, then the conversion was certainly requested in bad

6

faith. The Court should not reward the Debtor with a "get out of jail free card" with respect to standing, to the extent that conversion constitutes one (it may not).

21. Finally, the Federal Complaint requests compensatory damages and punitive damages against three separate defendants; one of them, Ms. Kiriakou, is also the largest creditor of the Debtor's estate. The claims contained in the Federal Complaint, if meritorious (which they most assuredly are not), likely constitute the largest non-exempt asset of the Debtor's estate. *See* Schedule A/B. The Debtor's intentional concealment of the pre-petition claims unquestionably prejudiced his creditors and the estate. Under the *Marrama* standard, the Debtor's misrepresentation of the largest asset of the estate, coupled with suspicious timing of a motion to convert to chapter 13 case, constitute bad faith and cause to deny the motion to convert.

B.    Attempt to Discharge or Pay Minimally Clear Domestic Support Obligations

22. Ms. Kiriakou, the Debtor's former spouse[2], has two claims against the Debtor for attorney's fees awarded by the Arlington County Circuit Court (the "Circuit Court"). First, on January 31, 2020, the Circuit Court ordered the Debtor to pay Ms. Kiriakou's attorneys fees of $6,525 in connection with a the unsuccessful appeal of a permanent family abuse protective order granted to Ms. Kiriakou against the Debtor (the "Protective Order Claim") [Claims Reg. No. 2-1]. Second, on February 12, 2020, the Circuit Court entered a final custody order awarding Ms. Kiriakou sole legal and physical custody of the Debtor's three minor children and directing the Debtor to pay Ms. Kiriakou's attorney's fees in the amount of $130,425.35 (the "Custody Claim")[Claims Reg. No. 1-1]. The Protective Order Claim and the Custody Claim are

---

[2] Ms. Kiriakou and the Debtor were divorced by Final Order of Divorce entered November 2, 2018 by the Arlington County Circuit Court. The Divorce Order affirmed, ratified and incorporated a Marital Settlement Agreement dated August 29, 2018. The Marital Settlement Agreement, referenced herein, was filed under seal with this Court's permission as Exhibit B to Ms. Kiriakou's Motion for Relief from Stay [Docket No. 30].

collectively the "Domestic Support Obligations"[3] and are described in more detail in Ms. Kiriakou's Complaint for Declaration of Non-Dischargeability of Debtor Pursuant to Section 523 of the Bankruptcy Code [Adv. Proc. No. 20-01037], and Ms. Kiriakou's Motion for Relief from Stay [Docket No. 30].

23. The Debtor's original Schedules list Reese Law as the creditor of the Custody Claim, surely in an attempt to bypass the non-dischargeability provisions of the Bankruptcy Code with respect to debts owed "to a former spouse". Docket No. 21, Schedule E/F; 11 U.S.C. §§523(a)(5) and (a)(15). The Debtor listed (and continues to list) the Protective Order Claim as a general unsecured claim. *See* Schedule E/F. The Debtor hoped that Ms. Kiriakou was not prudent enough to challenge these mischaracterizations before the Debtor obtained a Chapter 7 discharge. The Debtor has conceded that the Custody Claim is owed to Ms. Kiriakou but maintains it is a general unsecured claim. *See* Docket No. 37, Schedule E/F ¶4.4. The Debtor does not list either of the Domestic Support Obligations as contingent, unliquidated or disputed.

24. Now challenged by a non-dischargeability complaint, the Debtor's strategy has changed. He would prefer that the Domestic Support Obligations be found to constitute debts under §523(a)(15), which would be non-dischargeable in chapter 7 but dischargeable under the Chapter 13 "super discharge" provision of §1328(a)(2). *See* Debtor's Answer to Complaint, Adv. Proc. Doc. No. 13. This is despite overwhelming case law in this Court and nationally that attorney's fees awarded in connection with custody are domestic support obligations. *See e.g.*, *In re Coe*, 2017 Bankr LEXIS 3794, at *5 (Bankr. E.D.Va. 2017) (holding that "[l]egal fees incurred in connection with custody determinations are uniformly held to be non-dischargeable support obligations").

---

[3] The Circuit Court orders awarding Ms. Kiriakou the Protective Order Claim and the Custody Claim were filed under seal with this Court's permission as Exhibit D and Exhibit E, respectively, to Ms. Kiriakou's Motion for Relief from Stay [Docket No. 30].

25. The Debtor's current filings do not provide the Debtor's projected monthly payment in a hypothetical Chapter 13 case; in fact, they assert that the Debtor is not eligible for Chapter 13. *See* Chapter 7 Means Test ¶¶ 36-37. However, based on his claimed monthly disposable income of just $218.67 (Chapter 7 Means Test ¶ 39c), it is transparent that the Debtor seeks to convert this case to Chapter 13 in order to pay *less* to Ms. Kiriakou, his largest creditor, rather than more. Indeed, Debtor's counsel has absurdly represented to the undersigned that the Debtor plans to fund his Chapter 13 plan with an award on the claims in the Federal Complaint; that is, he plans to pay Ms. Kiriakou by suing Ms. Kiriakou.

26. The Domestic Support Obligations arose, quite literally, on account of the Debtor's bad behavior, the Circuit Court finding sufficient cause to both issue, and uphold, a permanent family abuse protective order against the Debtor and grant Ms. Kiriakou sole legal and physical custody of the Debtor's children. The Debtor's blatant attempt to discharge or pay minimally the Domestic Support Obligations, first through Chapter 7 and now through a conversion to Chapter 13, are consistent with the Debtor's pattern of abusive behavior towards Ms. Kiriakou and are sufficient for this Court to find bad faith. *See Neufeld v. Freeman*, 794 F. 2d 149, 151 (4th Cir. 1986) (finding the debtor's "[r]esort to the more liberal discharge provisions of Chapter 13…may well signal an "abuse of the provisions, purpose, or spirit" of bankruptcy"); *In re Brandland*, 570 B.R. 203, 218-219 (Bankr. E.D.Va. 2017)(finding that the debtor's filing of chapter 13, rather than chapter 7, to discharge debts owed to his ex-wife, coupled with his pre-petition concealment of assets, constituted bad faith and cause to *sua sponte* dismiss the case). The Court should find that the Debtor's request to convert his case to chapter 13 was made in bad faith and deny the relief he seeks.

9

C.      Additional and Repeated Misrepresentations in Statements Made Under Oath

27.     As stated above, Ms. Kiriakou presumes that the Debtor originally filed for Chapter 7 with the hope of quickly discharging debts owed to Ms. Kiriakou and the Debtor's limited other creditors. The Debtor's filings are rife with inconsistencies and misstatements, and his subsequent amendments show a transparent attempt to manipulate his expenses to feign Chapter 7 eligibility. Still, the Clerk of this Court has issued a Notice of Presumed Abuse Under 11 U.S.C. §707(b)(2) [Docket No. 28], which the debtor may rebut by showing special circumstances. The Debtor has instead punted, and requests to convert his case.

28.     Even without an actual showing of abuse under §707(b), the Debtor's schedules and statements, submitted under oath and penalty of perjury, are so facially deficient and inaccurate as to be evidence of bad faith. This is particularly true when compared to the Marital Settlement Agreement, signed less than two years ago, and the contents of the Federal Complaint.

(i)     The Debtor's Initial Schedules

29.     The Debtor filed his initial Schedules and Statement of Financial Affairs on April 15, 2020 [Docket No. 21]. He claimed $485,306.00 in total assets (Schedule A/B), but no amounts owed by others (¶30) or claims against third parties (¶33). He claimed $9,000 in gross monthly wages (Schedule I), and $5,698.00 in total monthly expenses (Schedule J).

30.     Despite having no custody of his children, on Schedule J, he claims to have two dependent children, but no expenses for child care or education costs (¶8) or payments of support (¶¶ 18 and 19).[4]

---

[4] Notably, prior to January 29, 2020, the Debtor and Ms. Kiriakou shared 50/50 custody of their three minor children. The Debtor had no custody of his children after that date. Pursuant to the Marital Settlement Agreement between the Debtor and Ms. Kiriakou, the Debtor was permitted to take a tax exemption in only one child in 2019. *See* Marital Settlement Agreement, ¶6F. The Debtor's only actual child care cost at the time of the bankruptcy was,

10

31.     The Debtor's Means Test stated that he has 3 people in his household, and that he still exceeds the median income for a family in Virginia.  Form 122-A-1 ¶13.  Accordingly, the Debtor was required to submit Form 122A-2 to determine if a presumption of abuse arises with respect to his Chapter 7 petition.

32.     For all purposes under Form 122A-2, the Debtor claims allowed deductions for a 3 person household, despite having no direct out of pocket healthcare or other costs for his children. Form 122A-2 ¶5.  He claimed $240 in monthly court ordered expenses (presumably, the Support Claim) (¶19) and $200 for child care costs, such as babysitting, daycare nursery or preschool (¶ 21).  In addition to the $7,864.80 in IRS expense allowances, the Debtor listed $642 in additional expense deductions for health insurance, food/clothing and continuing charitable contributions (no corresponding charitable distribution is disclosed in Schedule J ¶14) (¶32). The Debtor also claimed an additional $281 in vehicle expenses, despite having already claimed the maximum IRS vehicle deduction and public transportation expense (¶¶ 13, 15).  In sum, the Debtor claimed a staggering $8,788.00 in total monthly deductions from his alleged $9,000 monthly earnings and only $212 per month in disposable income to pay to his creditors (¶38, 39c). No presumption of abuse arises, according to the Debtor (¶42).

33.     Conspicuously absent from the Debtor's initial Schedules are, *inter alia*, the Debtor's Vespa (which plays prominently in the Federal Complaint) (Schedule A/B, Part 2); the Debtor's life insurance policy with death benefits of $500,000 (Schedule A/B, Part 4 ¶31)[5];

---

pursuant to the Marital Settlement Agreement, a reimbursement of Ms. Kiriakou for thirty-five percent (35%) of mutually agreed extracurricular, tutoring and/or specialized instruction and all reasonable and necessary unreimbursed medical, dental, orthodontic and hospital expenses for the Children (the "Support Claim").  *See* Marital Settlement Agreement, ¶6D.

[5] Pursuant to the Marital Settlement Agreement, the Debtor is required to maintain a term life insurance policy with American General with death benefits in the amount of $500,000.  *See* Marital Settlement Agreement, ¶19A.

various streams of income as a sole proprietor (author, speaker, consultant, artist) (SOFA ¶27)[6];

reference to the Debtor's pending appeal of the Custody Order (SOFA Part 3 ¶6; Part 4 ¶9); and disclosure of pre-petition legal expenses paid to counsel representing the Debtor in the appeal, in the protective order trial and subsequent appeal, and in the custody case. The Debtor who, upon information and belief, rents his home, fails to list a residential lease as an executory contract or landlord as a notice party. *See* Schedule G. The Debtor inexcusably fails to list as assets the claims asserted in the Federal Complaint (Schedule A/B), and also to disclose the pre-petition criminal action referenced therein, *Commonwealth of Virginia v. John Kiriakou* (Case No. 2019-07100120) (SOFA Part 4 ¶9), which was pending through March 16, 2020. *See* Federal Complaint ¶¶ 29, 51. Upon information and belief, the Debtor entered a criminal plea deal with respect to these charges.

  (ii)  The Debtor's First Amended Schedules

  34.  On May 11, 2020, the Debtor filed various amended schedules and statements. Docket Nos. 26, 27. To his assets, he added the previously undisclosed Vespa, and one Andy Warhol lithograph painting worth $5,000.[7] Schedule A/B. To his expenses, he added $200 in childcare and children's education costs (Schedule J, ¶8), and $400 in court ordered payments of support (Schedule J, ¶18).

  35.  In his amended Statement of Financial Affairs, the Debtor added over $30,000 in income earned in the previous two calendar years (SOFA, Part 2 ¶4), and disclosed "contract writing" as an income source earned through John Kiriakou, LLC (SOFA, Part 11 ¶27). The

---

[6] In August 2018, the Debtor represented in his Marital Settlement Agreement that he earns total annual income of $140,000 or $11,667.67 per month from his employment by RIA Global, LLC and various speaking engagements. *See* Marital Settlement Agreement, ¶6A.

[7] Pursuant to the Marital Settlement Agreement, the Debtor retained as personal property many additional valuable art and collectors' items, none of which were disclosed as assets, including: two Warhol paintings (Happy Happy Everything and S&H Greenstamps); a John Dillinger Framed Wanted Poster, Lincoln Wallpaper, a Vintage Bernard Villemot Lithograph, an Edward Curtis Print, a Botero Lithograph, a coin collection and a postcard collection. Marital Settlement Agreement ¶17C, D.

Debtor still failed to list any income attributable to book sales, speaking engagements, consulting, the sale of art or other goods available on his personal website, or from donations solicited from the general public online. *See* https://www.johnkiriakou.com/ and https://john-kiriakou.square.site/.

36.     Inconveniently for the Debtor, the $30,000 increase in his reported income required him to adjust his Means Test calculation to claims additional "allowed deductions." Accordingly, he filed an amended Form 122-A-2 which claimed an additional $400 in court-ordered payments (¶19), presumably attributable to the Support Claim.  The Debtor has custody of zero children and is essentially triple-dipping on child support expenses for the purposes of his Means Test calculation, deducting expenses for a three person household <u>and</u> claiming separate deductions for child care and a court ordered Support Claim.   The Debtor now claims $8,948 in allowed monthly deductions from his $9,166.67 monthly income (¶39). No presumption of abuse arises, according to the Debtor (¶42).

    (iii)    <u>The Debtor's Second Amended Schedules</u>

37.     On June 12, 2020, the Debtor again amended certain schedules and statements. Docket No. 37.  Addressing deficiencies raised by Ms. Kiriakou nearly two months earlier, the Debtor listed the ongoing priority Support Claim of Ms. Kiriakou (Schedule A/B ¶2.1); conceded that the Custody Claim was owed to Ms. Kiriakou rather than Reese Law (Schedule E/F ¶4.4); and disclosed his pending appeal of the Custody Order and the $21,000 legal fee payment made just prior to the Petition Date (Schedule A/B ¶35; SOFA Part 3 ¶6, Part 4 ¶9).

38.      The Debtor also, spectacularly, disclosed the claims contained in the Federal Complaint against the Debtor, Northup Grumman and John Bamford but only <u>after</u> filing such complaint.  The Debtor does not list any payment made pre-petition or claim owed to the two

counsel of record on the Federal Complaint (spending, presumably, funds that would constitute property of the estate in a Chapter 13 should he be permitted to convert). Northrup Grumman and John Bamford are not listed as notice parties in the bankruptcy case, and were not served with the Debtor's amended schedules listing the cause of action or any other notice of bankruptcy. *See* Debtor's Creditor Matrix.

39. Without regard for the reasonableness of the Debtor's expenses, including $3,400 in monthly rent for one person, or whether the Debtor's filing is indeed abusive under §707(b)(2) or (b)(3)[8], the above-recitation shows that the Debtor is incredibly reckless (or, more likely, calculating) with his disclosures. The Debtor's repeated declaration of ineligibility for Chapter 13 should be enough to disqualify him from the conversion he seeks. Form 122A-2 ¶36.

40. In sum, the Debtor's misrepresentations and inconsistencies show a complete disregard for his obligation of candor to the Court, the Chapter 7 trustee and his creditors. His repeated failure to submit accurate disclosures is sufficient to find bad faith and warrant denial of his motion to convert. *See e.g.*, *In re* Goines, 397 B.R. 26, 30 (Bankr. M.D.N.C. 2007) (finding and undisclosed transfer and repeated misrepresentations on the debtor's schedules warranted the denial of a motion to convert from chapter 7 to 13); *In re Jennings*, Case No. 12-23615, 2013 Bankr. LEXIS 1020, *13 (Bankr. W.D.N.C., March 19, 2013). Here, the Court should find that the Debtor's repeated misrepresentations made under oath and failure to disclose assets, income streams, legal actions, and expenses, among other things, constitute bad faith and abusive practices and deny the Debtor's motion to convert this case to Chapter 13.

---

[8] Ms. Kiriakou has filed a Motion to Extend Time proscribed by Bankruptcy Rule 1017(e)(1) to file a Motion to Dismiss this Chapter 7 case for abuse [Docket No. 44]. Ms. Kiriakou intends to file Motion for Rule 2004 Examination seeking additional information about the Debtor's assets and financial affairs in order analyze confirmability of any Chapter 13 plan proposed by the Debtor, should he be permitted to convert his case, or abuse under Chapter 7.

## **CONCLUSION**

41. The Supreme Court of the United States found in *Marrama* that a Debtor's misleading or inaccurate statements about his principal asset constituted bad faith and warranted denial of a motion to convert under §706. Here, the Debtor not only made misleading or inaccurate statements about his principal asset, but he concealed (and continues to conceal) assets, income streams, legal actions, and other items from the Court. Further, he's abusing the bankruptcy process by using it as both a sword and a shield against his former spouse. Should this case be converted, the Debtor's actions certainly would constitute cause to dismiss the case under 11 U.S.C. §1307(c). Accordingly, under the *Marrama* standard, the Court should overwhelmingly find that the Debtor's bad faith is cause deny his request to convert this case from Chapter 7 to Chapter 13.

WHEREFORE, Heather Kiriakou respectfully requests entry of an order sustaining this objection to the Debtor's motion to convert this case from Chapter 7 to Chapter 13 and granting such other and further relief as is just and proper.

June 24, 2020                           Respectfully Submitted,

                                        */s/ Andrea Campbell Davison*
                                        Andrea Campbell Davison, VSB# 78036
                                        BEAN, KINNEY & KORMAN, P.C.
                                        2311 Wilson Blvd., 5th Floor
                                        Arlington, Virginia 22201
                                        (703) 525-4000
                                        (703) 525-2207 (Fax)
                                        adavison@beankinney.com
                                        *Counsel for Heather Kiriakou*

**CERTIFICATE OF SERVICE**

       I hereby certify that on June 24, 2020, a true and correct copy of the foregoing Objection was served via the Court's CM/ECF service on all parties entitled to receive notice in the above-captioned case, including the following parties:

Ashvin Pandurangi
AP Law Group, PLC
211 Park Ave.
Falls Church, VA 22046
*Counsel for Debtor*

Donald F. King
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
*Chapter 7 Trustee*

Jack I. Frankel
Office of the U.S. Trustee - Region 4
1725 Duke Street, Suite 650
Alexandria, VA 22314
*U.S. Trustee*

                                                   */s/ Andrea Campbell Davison*
                                                   Andrea Campbell Davison