Andrea Campbell Davison (VSB No. 78036)
BEAN, KINNEY & KORMAN, P.C.
2311 Wilson Blvd, Suite 500
Arlington, Virginia 22201
(703) 525-4000

*Counsel for Heather Kiriakou*

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| In re: | |
| **JOHN KIRIAKOU,** | **Case No. 20-10934-KHK** |
| **Debtor.** | **Chapter 7** |

**<u>MOTION FOR RULE 9011 SANCTIONS AGANST DEBTOR</u>**

Heather Kiriakou ("Movant" or "Ms. Kiriakou"), by counsel, files this Motion seeking

sanctions against Debtor John Kiriakou (the "Debtor") and his counsel, as appropriate.   In

support, Movant states as follows:

**<u>BACKGROUND</u>**

A.      <u>The Parties</u>

1.      Ms. Kiriakou is the Debtor's former spouse and the sole legal and physical

custodial parent to three (3) minor children (the "Children") born of her marriage to the Debtor.

2.      Ms. Kiriakou and Debtor were divorced by Final Order of Divorce entered

November 2, 2018 (the "Divorce Order") by the Arlington County Circuit Court (the "Circuit

1

Court"). The Divorce Order affirmed, ratified and incorporated a Marital Settlement Agreement dated August 29, 2018 between Ms. Kiriakou and Debtor (the "Marital Settlement Agreement").

3.        Pursuant to the Marital Settlement Agreement, Ms. Kiriakou and the Debtor are to share the costs of all mutually agreed extracurricular, tutoring and/or specialized instruction and all reasonable and necessary unreimbursed medical, dental, orthodontic and hospital expenses for the Children in accordance with their incomes. Ms. Kiriakou, being the custodial parent, currently advances all such expenses and the Debtor is to reimburse Ms. Kiriakou for thirty-five percent (35%) of the total (the Debtor's percent responsibility of such expenses being the "Support Claim", such Support Claim generally accruing monthly and being ongoing in nature).

4.        Following the entry of the Divorce Order, the Debtor took certain civil and criminal actions which prompted Ms. Kiriakou to seek permanent family abuse protective order against the Debtor from the Arlington Juvenile and Domestic Relations District Court (the "JDR Court").

5.        After an evidentiary hearing, the JDR Court granted Ms. Kiriakou's request for a permanent protective order (the "Protective Order"). The Debtor appealed the grant of the Protective Order to the Circuit Court which, after an evidentiary hearing, upheld a two year permanent Protective Order in favor of Ms. Kiriakou. Citing the Debtor's previous admissions, and his failure to contest most of Ms. Kiriakou's allegations or assertions of legal authority leading to the grant of the Protective Order, Ms. Kiriakou moved the Circuit Court for an award of attorney's fees in connection with the appeal. On January 31, 2020, the Circuit Court granted Ms. Kiriakou's motion for attorney's fees and ordered that the Debtor pay Ms. Kiriakou's fees, through counsel, in the amount of $6,525.00 (the "Protective Order Claim") within thirty (30) days of entry of the order.

6.      On or about July 18, 2019, Ms. Kiriakou filed with the Circuit Court a Motion to Modify Legal and Physical Custody of the Children (the "Custody Motion").  By the Custody Motion, Ms. Kiriakou sought sole legal and physical custody of the Children due to, *inter alia*, the Debtor's "menacing, denigrating and threatening behavior" towards Ms. Kiriakou and the Children, asserting that it was in the best interest of the Children that they not be in the Debtor's care.

7.      After a two-day evidentiary hearing on Ms. Kiriakou's Custody Motion and related Petition to Show Cause, on January 29, 2020, the Circuit Court entered a Final Order on Ms. Kiriakou's Motion to Modify Custody and Motion to Show Cause, such order being incorporated into a written order entered February 12, 2020 (the "Custody Order"). The Custody Order, *inter alia*, granted Ms. Kiriakou sole legal and physical custody of the Children and ordered the Debtor to pay, through counsel, Ms. Kiriakou's legal fees incurred in the matter in the amount of $130,425.35 (the "Custody Claim").   The Custody Claim was to be paid within ninety (90) days of January 29, 2020.

8.      The Marital Settlement Agreement[1] provides that "[i]n the event of any further legal action to enforce the terms of this Agreement or in the event of any subsequent child support or child custody proceeding" that the Court may award reasonable suit costs, fees and legal costs. *See* Marital Settlement Agreement, ¶29.

B.      The Bankruptcy Case

9.      On March 27, 2020, the Debtor filed a voluntary petition initiating the above-captioned chapter 7 bankruptcy case (the "Petition").   *See* Docket No. 1.   The Petition was signed electronically by the Debtor and his attorney, Ashvin Pandurangi ("Debtor's Counsel").

---

[1] The Marital Settlement Agreement, referenced herein, was filed under seal with this Court's permission as Exhibit B to Ms. Kiriakou's Motion for Relief from Stay [Docket No. 30].

Donald F. King was appointed Chapter 7 Trustee (the "Chapter 7 Trustee") and is duly acting in such capacity.

10.     On April 15, 2020, the Debtor filed his initial Schedules, Statement of Financial Affairs and Chapter 7 Means Test (collectively, and as amended, the "Schedules"). *See* Docket No. 21.   Among other deficiencies, the initial Schedules listed the Custody Claim as a non-priority, unsecured claim owed to Reese Law rather than to Ms. Kiriakou and the Means Test provided that three (3) persons lived in the Debtor's household.  *See* Schedule E/F, ¶ 4.7.

11.     On April 22, 2020, undersigned counsel directed a letter to Debtor's Counsel and the Chapter 7 Trustee regarding certain deficiencies in the Debtor's Schedules and providing legal support for the non-dischargeable, priority nature of the Custody Claim, the Protective Order Claim and the Support Claim.  A copy of the Custody Order was attached to such letter, reflecting the Debtor's loss of custody of the Children as of January 29, 2020.  *See* Letter (excluding exhibits), attached hereto as Exhibit A.

12.     On April 23, 2020, the Chapter 7 Trustee conducted the §341(a) meeting of creditors, the date first set for such meeting.  After the §341(a) meeting of creditors, the Debtor amended his Schedules, Statement of Financial Affairs and Chapter 7 Means Test several times. *See* Docket Nos. 26, 27, 37, 52, 54.

13.     On June 11, 2020, the Debtor filed a Motion to Convert this case to a case under Chapter 13 pursuant to 11 U.S.C. §706(a).  *See* Docket No. 36.   Ms. Kiriakou objected to the Motion to Convert to Chapter 13.  *See* Docket No. 48.  In her Objection, Ms. Kiriakou laid out a litany of errors, omissions and misstatements in the Debtor's schedules, and asserted various actions of the Debtor amounted to bad faith in filing the case and in seeking a conversion to Chapter 13.  The statements and recitations made in the Objection are incorporated herein.  The

Debtor filed a response to the Objection, blithely providing an "oops" defense to the various deficiencies and issues with his Schedules. *See* Docket No. 55.

14.     Among the most egregious issues with his Schedules, in the first three filed iterations of the Debtor's Means Test Calculation Form 122A-2, the Debtor claims allowed deductions for a three person household, despite having no custody and no direct out of pocket healthcare or other costs for his Children. He further claimed deductions for monthly court ordered expenses (presumably, the Support Claim) and for child care costs, such as babysitting, daycare, nursery or preschool. *See* Docket Nos. 21, 26 and 27.   When the Debtor disclosed previously undisclosed income streams, he increased these deductions to feign continued Chapter 7 eligibility. *Id.*

15.     After a hearing on the Motion to Convert, the Court sustained Ms. Kiriakou's objection, finding that the Debtor forfeited his right to convert the case to Chapter 13 *for bad faith*. *See* Docket No. 59.

16.     A presumption of abuse under §707(b) has arisen with respect to the Chapter 7 case. *See* Docket Nos. 28, 52, ¶40.   The Debtor has not offered any special circumstances to rebut such a presumption. *See* Docket No. 52, ¶43.

17.     On July 20, 2020, the Debtor filed a Motion seeking to voluntarily dismiss this case. *See* Docket No. 70.

## RELIEF REQUESTED

18.     On account of the Debtor's violation of Bankruptcy Rule 9011(b), Ms. Kiriakou seeks sanctions against the Debtor (and, as appropriate, his counsel) in the form of payment of her legal fees and expenses incurred in the bankruptcy case, including the filing of this Motion, and a one year bar against the Debtor's re-filing under any chapter of the Bankruptcy Code.

5

## APPLICABLE LAW

19.     Bankruptcy Rule 9011 provides, in relevant part:

(b) By presenting to the court (whether by signing, filing, submitting or later advocating, a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, -

(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needles increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal or existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support, or if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

20.     In determining whether or not a petition has been filed for an improper purpose, the court is to apply an objective standard of reasonableness. *McGahren v. First Citizens Bank & Trust Co. (In re Weiss)*, 111 F. 3d 1159, 171 (4th Cir. 1997).  "The Court may consider circumstantial facts that surround the filing and evidence of the signer's purpose." *Id. See also Branch Banking & Trust Co. v. Michael's Entrs. of Va., Inc. (In re Michael's Enters. of Va., Inc.)*, 519 B.R. 96 (Bankr. E.D.Va. 2014).  This Court further may look to considerations outlined in the Advisory Committee notes for Rule 11 of the Federal Rule of Civil Procedure, including whether the violation was willful, was part of pattern of behavior, and whether the abuse was employed in other litigation. *See In re Johnson*, 2008 Bankr. LEXIS 164, *26-27 (Bankr. E.D. Va. January 18, 2008).

21.     Rule 9011(c)(1)(A) provides that a motion for sanctions may only be submitted to the Court if, within 21 days of service, a "challenged paper, claim, defense, contention,

allegation or denial is not withdrawn or appropriately corrected, except that this limitation shall

not apply if the conduct alleged is the filing of a petition in violation of subdivision (b)."

22.     Rule 9011(c)(2) provides that both nonmonetary and monetary sanctions may be

awarded including, where "warranted for effective deterrence, an order directing payment to the

movant or some or all of the reasonable attorneys' fees and other expenses incurred as a direct

result" of the Debtor's violation of Rule 9011(b).

## ARGUMENT

23.     The Debtor's Chapter 7 Petition was filed for a clear improper purpose,

specifically an attempt to discharge debts under Chapter 7, including non-dischargeable debts

owed to Ms. Kiriakou, despite not qualifying for Chapter 7 relief.  Although the Debtor's various

filings in the case violated all subsections of Rule 9011(b), the filing of the Chapter 7 Petition

clearly violated Rule 9011(b)(1).  The "safe harbor" of Rule 9011(c)(1)(A) accordingly does not

apply.

24.     At the hearing on the Motion to Convert, this Court found that:

"It is clear, based on the schedules and all of the amendments thereto, that this debtor
failed to disclose assets on his original schedules.  And the lack of focused argument that
counsel for the debtor has made is completely unconvincing.  There is no doubt in my
mind that Mr. Kiriakou knew what he was omitting from the schedules, and it appears
that these matters only came to light because the creditor was involved.  I understand this
debtor is not eligible for Chapter 7.  I also believe that the debtor knew this when he filed
the case.  The first means test simply was inaccurate in a very, very deliberate way."

*See* Transcript of Hearing on Debtor's Motion to Convert Case to Chapter 13, attached hereto as

Exhibit B and incorporated herein.

25.     The Debtor's bankruptcy petition and various amended schedules were not well-

grounded in fact (being provably, factually deficient in a multitude of ways) or in law (the

Debtor seeking discharge of clearly non-dischargeable debt, in a Chapter 7 case for which he did

7

not qualify).  Indeed, in filing Chapter 7, the Debtor presumably believed that his creditors would not review or challenge his Schedules, filed under penalty of perjury, or act fast enough to seek a determination of discharge of mischaracterized debts.  There was no change in circumstances for the Debtor between the Petition Date and today[2]; the Debtor simply filed six amendments to the Schedules reacting to various deficiencies identified by Ms. Kiriakou in her pleadings and changing his strategy, no longer finding it preferable to be a Chapter 7 debtor for reasons detailed in Ms. Kiriakou's Objection to the Debtor's Motion to Convert.  Ultimately, the Debtor accomplished nothing in bankruptcy, however he did cause *substantial* delay and expense to Ms. Kiriakou.  Vindictive legal tactics, lying and abuse are part of the  Debtor's clear pattern of behavior.[3]

26.    To the extent that the Debtor misled his counsel for the purposes of filing this Chapter 7 case, Debtor's Counsel became aware that the Debtor had custody of no children no later than April 22, 2020 when undersigned counsel sent the letter attaching the Custody Order. The Debtor did not update his Means Test calculation to concede that he only had a one person household and that a presumption of abuse of Chapter 7 arose until July 8, 2020, nearly four months after the Petition Date.  *See* Docket No. 52.

27.    Ms. Kiriakou has suffered significant financial hardship as a result of the Debtor's actions, including non-payment of the Protective Order Claim and the Custody Claim, which were delayed on account of the Debtor's Chapter 7 Petition.  Additionally, Ms. Kiriakou has had to engage undersigned counsel to protect her interests in this Chapter 7 case, including appearing

---

[2] On June 12, 2020, several weeks after the Petition Date, the Debtor filed a complaint in the District Court for the Eastern District of Virginia against Ms. Kiriakou, Northrup Grumman and John Bamford (Case No. 1:20-cv-00662) (here and in various other pleadings, the "Federal Complaint"), and then subsequently disclosed the claims on his amended Schedules.

[3] Fittingly, the Debtor has apparently recently authored a book, to be released in May 2021, titled " The CIA Guide to Lying and Lie Detection: The Ultimate Guide to Lying and Getting the Truth: https://www.amazon.com/s?k=john+kiriakou&crid=1N6LOIQG3O177&sprefix=john+kiriakou%2Caps%2C169&ref=nb_sb_ss_i_1_13

at the §341 meeting, filing a Complaint for a determination of non-dischargeability of clear domestic support obligations (challenged by the Debtor, despite weak legal authority) (Adv. Proc. No. 20-01037), a Motion for Relief from Stay [Docket No. 30], a Motion for Extension of Time to File a Motion to Dismiss [Docket No. 44]; and the Objection to the Debtor's Motion to Convert.   Each of these pleadings required Ms. Kiriakou to incur fees for counsel to brief, with specificity, the Debtor's misstatements and omissions in his Schedules and/or seek relief from the Debtor's improper actions.

28.     Monetary sanctions with respect to Ms. Kiriakou's legal fees are further appropriate in this case because the Marital Settlement Agreement provides for an award of legal fees in the event that the Marital Settlement Agreement or any child custody or support must be enforced.  Ms. Kiriakou has participated in this bankruptcy case in order to enforce her right to payment for such matters.

29.     Ms. Kiriakou has expended at least $30,000.00 in legal fees and incurred at least $700.00 in legal costs to date just in this bankruptcy case, notwithstanding legal fees payable by the Debtor under the Protective Order Claim and the Custody Claim.  Further, Ms. Kiriakou is incurring fees to defend herself against the Debtor in his appeal of the Custody Order and the Federal Complaint, as well as in her efforts to establish child support from the Debtor on account of her full custody of his Children.

30.     The Debtor has shown proclivity for frivolous, vendetta-driven litigation.  The Debtor is inclined to use the legal system as both a sword and a shield. Accordingly, in addition to fees sought with respect to the filing of the improper Chapter 7 Petition, Ms. Kiriakou seeks a one-year ban on the Debtor's eligibility to file another petition under any chapter of the

Bankruptcy Code, such ban being warranted to prevent the Debtor's re-filing to again seek to pay minimally and discharge the same debts deemed non-dischargeable in this case.

WHEREFORE, Movant Heather Kiriakou respectfully requests that this Court enter an order:

(a) determining that the Debtor has violated Federal Rule of Bankruptcy Procedure 9011(b)(1); and

(b) awarding Ms. Kiriakou reimbursement of her reasonable legal fees and costs incurred in this case in an amount to be submitted by affidavit of undersigned counsel at the hearing, but in no event less than $30,676.95, to be paid by the Debtor and/or his attorney, jointly and severally, as sanctions; and

(c) directing that the Debtor may not be a debtor under any chapter of the Bankruptcy Code for a period of one year following dismissal of this case;

(d) and granting other and further relief as is just and appropriate.


July 31, 2020                          Respectfully Submitted,


                                       */s/ Andrea Campbell Davison*
                                       Andrea Campbell Davison, VSB# 78036
                                       BEAN, KINNEY & KORMAN, P.C.
                                       2311 Wilson Blvd., 5th Floor
                                       Arlington, Virginia 22201
                                       (703) 525-4000
                                       (703) 525-2207 (Fax)
                                       adavison@beankinney.com
                                       *Counsel for Heather Kiriakou*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, a copy of the foregoing Motion for Rule 9011 Sanctions been served on all parties entitled to receive notice via US Mail on the parties listed below, as well as via the Court's CM/ECF service on all parties receiving notice in such manner.

John Kiriakou
1904 N. Daniel Street
Arlington, Virginia 22201
*Debtor*

Ashvin Pandurangi
AP Law Group, PLC
211 Park Ave.
Falls Church, VA 22046
*Counsel for Debtor*

Donald F. King
1775 Wiehle Avenue, Suite 400
Reston, VA 20190
*Chapter 7 Trustee*

Jack I. Frankel
Office of the U.S. Trustee - Region 4
1725 Duke Street, Suite 650
Alexandria, VA 22314
*U.S. Trustee*

 /s/    *Andrea Campbell Davison*
Andrea Campbell Davison



2311 WILSON BOULEVARD
SUITE 500
ARLINGTON, VA 22201
PHONE 703.525.4000
FAX   703.525.2207

Andrea Campbell Davison, Esq.
adavison@beankinney.com
Admitted in VA, DC, MD and FL
703-284-7277

April 22, 2020

VIA E-MAIL (ap@aplawg.com)

AP Law Group, PLC
211 Park Avenue
Falls Church, Virginia 22046
Attn.:  Ashvin Pandurangi

Re:    *In re John Kiriakou*, Case No 20-10934-KHK

Dear Ashvin:

This firm represents Ms. Heather Kiriakou in the above-referenced matter.  Ms. Kiriakou is the former spouse to John Kiriakou (the "Debtor") and the sole legal and physical custodial parent to the three minor children born of the marriage between Ms. Kiriakou and the Debtor.

The Custody Claim

The divorce of Ms. Kiriakou and the Debtor was finalized by order of the Arlington County Circuity Court (the "Circuit Court") entered November 2, 2018 (the "Divorce Order").  On February 12, 2020, the Circuit Court entered a Final Order (the "Custody Order") on Ms. Kiriakou's Motion to Modify Custody and Motion to Show Cause which, among other things, ordered the Debtor to pay the legal fees incurred by Ms. Kiriakou with respect to her Motions in the amount of $130,425.35 (the "Custody Claim").  *See* Custody Order, attached hereto as Exhibit A.

In Schedule E/F, the Debtor lists Reese Law, Ms. Kiriakou's attorneys, as a creditor with an unsecured claim of $130,425.35.  *See* Schedules E/F, ¶ 4.7.  This is a clear mischaracterization of the Custody Claim.  Indeed, Ms. Kiriakou is the proper creditor and the Custody Claim is a domestic support obligation, as that term is defined in 11 U.S.C. §101(14A) in that it is owed to the Debtor's former spouse, is in the nature of maintenance or support, and is incident to the parties' Divorce Order establishing custody of their children.  Accordingly, the Custody Claim is entitled to priority under 11 U.S.C. section 507(a)(1) and is excepted from discharge under 11 U.S.C. sec 523(a)(5).  *See e.g. In re Coe*, 2017 Bankr. LEXIS 3794 (Bankr. E.D.Va. Nov. 2, 2017) (holding that legal fees incurred in connection with custody determinations are uniformly held to be non-dischargable support obligations).  We request and trust that the Debtor's schedules will be promptly amended to properly reflect the nature of the Custody Claim.

**EXHIBIT A**



In re: John Kiriakou
April 22, 2020
Page 2

<u>The Protective Order Claim</u>

Following entry of the Divorce Order, the Debtor took certain civil and criminal actions in violation of such Divorce Order.  Accordingly, Ms. Kiriakou sought and obtained a protective order against the Debtor from the Circuit Court.  Following the Debtor's unsuccessful appeal of the protective order, Ms. Kiriakou moved the Court for an award of attorney's fees, which was granted by Order entered January 31, 2020 in the amount of $6,525.00 (the "Fee Claim").  *See* Order granting attorney's fees, attached hereto as <u>Exhibit B</u>.

In Schedule E/F, the Debtor lists Ms. Kiriakou as an unsecured creditor on account of the Fee Claim.  *See* Schedules E/F, ¶ 4.4. Like the Custody Claim, the Fee Claim is clearly a domestic support obligation in that it is owed to the Debtor's former spouse, is in the nature of maintenance or support, and is incident to the Debtor's violation of the Divorce Order.  It is both entitled to priority under 11 U.S.C. section 507(a)(1) and is excepted from discharge under 11 U.S.C. sec 523(a)(5).  We request and trust that the Debtor's schedules be promptly amended to properly reflect the nature of the Fee Claim.

<u>Ongoing Support Obligations</u>

Pursuant to the Divorce Order and the underlying Separation Agreement, the Debtor is obligated to reimburse Ms. Kiriakou for 35% of the activity and unreimbursed medical expenses of the minor children (the "Support Claim").  As of the Petition Date, the Support Claim was approximately $2,000, although Ms. Kiriakou received, through counsel, a post-petition payment for February expenses.  March expenses remain outstanding.  The Debtor has indicated in his Schedules and Statement of Financial Affairs that he has no pre-petition or ongoing domestic support obligations.  We request that the Debtor's Schedules and Statement of Financial Affairs be promptly amended to properly reflect Ms. Kiriakou's pre-petition Support Claim and the Debtor's ongoing support obligations under the Divorce Order.

<u>Custody Appeal</u>

Prior to the Petition Date, the Debtor filed an appeal of the Custody Order with the Court of Appeals of Virginia.  The Debtor has failed to list this pending appeal in his Statement of Financial Affairs.  *See Statement of Financial Affairs*, Part 4, ¶9.  On April 20, 2020, Ms. Kiriakou received from the Court of Appeals an Acknowledgment of Receipt of the Record, an Appellate Mediation Notice and a notice of certain deadlines related to the appeal.  Ms. Kiriakou requests clarification from the Debtor that, should the Debtor intend to prosecute such appeal, that he does not intend to assert the automatic stay in order to prevent Ms. Kiriakou from defending the same.

This letter is submitted without waiver of any rights, remedies, defenses or privileges that Ms. Kiriakou may have as to the Support Claim or otherwise as regards the Debtor and his bankruptcy case.  Please do not hesitate to contact me with any questions.



In re: John Kiriakou
April 22, 2020
Page 3

Sincerely yours,

BEAN, KINNEY & KORMAN, P.C.

Andrea C. Davison

Enclosures (as stated)

cc:      Donald F. King, Chapter 7 Trustee
          1775 Wiehle Avenue, Suite 400
          Reston, Virginia 20190
          DonKing@ofplaw.com

```
 1                   IN THE UNITED STATES BANKRUPTCY COURT
                       EASTERN DISTRICT OF VIRGINIA (ALEXANDRIA)
 2
     In Re:                              )  Case No.  20-10934-khk
 3                                       )  Alexandria, Virginia
     JOHN KIRIAKOU,                      )
 4                                       )
                 Debtor.                 )  July 14, 2020
 5                                       )  10:07 a.m.
     ------------------------------- )
 6

 7                         TRANSCRIPT OF HEARING ON
             #36 DEBTOR'S MOTION TO CONVERT CASE TO CHAPTER 13
 8
      #44 MOTION TO EXTEND TIME TO FILE MOTION TO DISMISS ON BEHALF
 9                       OF HEATHER KIRIAKOU

10             BEFORE THE HONORABLE KLINETTE H. KINDRED
                    UNITED STATES BANKRUPTCY JUDGE
11
     APPEARANCES:
12   For the Debtor:              ASHVIN PANDURANGI, ESQ.
                                   AP LAW GROUP, PLC
13                                 211 Park Avenue
                                   Falls Church, VA 22046
14
     For Heather Kiriakou:        ANDREA CAMPBELL DAVISON, ESQ.
15                                 BEAN, KINNEY & KORMAN PC
                                   2311 Wilson Boulevard
16                                 Suite 500
                                   Arlington, VA 22201
17

18

19

20

21   Transcription Services:      eScribers, LLC
                                   7227 North 16th Street
22                                 Suite #207
                                   Phoenix, AZ 85020
23                                 (973) 406-2250

24   PROCEEDINGS RECORDED BY ELECTRONIC SOUND RECORDING.

25   TRANSCRIPT PRODUCED BY TRANSCRIPTION SERVICE.
```

EXHIBIT
B

1           THE CLERK:  Items 17 and 18 on the docket is John

2    Kiriakou, case number 20-10934.

3           MS. DAVISON:  Good morning, Your Honor.  Andrea

4    Davison on behalf of Heather Kiriakou.

5           THE COURT:  All right.

6           MR. PANDURANGI:  Good morning, Your Honor.  Ashvin

7    Pandurangi on behalf of the debtor, John Kiriakou.

8           THE COURT:  All right.

9           MR. PANDURANGI:  So this is the debtor's motion to

10   convert to Chapter 13.  The debtor filed a Chapter 7 voluntary

11   petition on March 22nd, 2020.  The case has not been previously

12   converted.  Ms. Heather Kiriakou, who I will refer to as the

13   creditor going forward, filed an objection to the motion.  Now,

14   I'm not sure if the Court wants Ms. Davison to proceed or for

15   me to proceed here.

16          THE COURT:  I'll hear your motion to convert first.

17          MR. PANDURANGI:  Okay.  So the objection to the

18   motion, I think, turns on two major issues, the first one being

19   the debtor's refusal or dispute of the classification of the

20   creditor's custody and protective order she claims as domestic

21   support obligations.  That is an issue common to all of the

22   related pleadings in the Court currently, including the

23   adversary proceeding to determine nondischargeability of the

24   claims, the motion for relief from stay filed by the creditor,

25   as well as this objection to the motion to convert.

1         So the creditor asserts, essentially, that it is

2    clearly a case that these claims are domestic support

3    obligations and no other conclusion really could be reached by

4    the Court.  So I would point out that they rely on the case of

5    In re Coe, which was decided by this court, Judge Kenney, in

6    2017.  And in that case, Judge Kenney states: "Legal fees

7    incurred in connection with custody determinations are

8    uniformly held to be nondischargeable support obligations."

9         Now, he immediately cites the case of Falk & Siemer,

10   LLP v. Maddigan as support for that finding, which was a Second

11   Circuit Court of Appeals case decided in 2002.  And the Court

12   in that case held that the question of whether a debt meets the

13   statutory requirement of being in the nature of support is a

14   factual determination of the bankruptcy court.

15        It also pointed out that the bankruptcy court and the

16   appellate court carefully analyzed the family court's decision

17   in making its factual determination that the order of legal

18   fees was in the nature of support.  It specifically noted that

19   family court listed factors of support such as the spouse's --

20   recipient spouse's  income, limited assets and resources,

21   financial obligations, and inability to pay legal fees.

22        So the bankruptcy court in that case concluded that

23   the family court's reliance on considerations of affordability

24   for the child's primary care provider supported a finding that

25   "Maddigan's obligation to Falk & Siemer is in the nature of

1  support for the debtor's child."

2          So I think, clearly, that the Court looked to the

3  financial condition of the recipient spouse, and the analysis

4  of that situation by the family court in determining whether

5  the award was actually substantively in the nature of

6  maintenance or support.

7          And I don't believe the Court has had a chance to

8  actually review in detail the family court findings, except as

9  presented in final order of the Court, and final order does not

10  reference any findings with regards to the financial situation

11  of the creditor here.

12          I would also say to you, the objection turns on the

13  issue -- or the main other objection raised in support of the

14  bad-faith argument is that the debtor here failed to list pre-

15  petition claims against the creditor in his schedules.

16          Now, I would point out to the Court here that Mr.

17  Kiriakou only retained his counsel for these civil claims and

18  federal complaints in early May 2020, which was about a month-

19  and-a-half after he filed the Chapter 7.  And so I don't think

20  there's any warranted or any obvious reason for the creditor to

21  claim that he was sitting on these claims and was trying to

22  hide them from the creditor and then file them during the

23  Chapter 7 and then convert to a 13 to pursue those claims.

24          I think it's simply a case of the debtor not realizing

25  the facts which give rise to claims prior to the filing of a

1    Chapter 7, those claims would be considered assets of the

2    estate even if he's not pursuing them at the time.  As soon as

3    he realized that they would be considered assets of the estate,

4    he amended his schedules on June 12th of 2020 to reflect those

5    claims in detail.

6           And the other issue here that was raised in the

7    objection is whether the debtor converting to 13 in order to

8    take advantage of the narrower definition of a domestic support

9    obligation would itself constituted some sort of bad faith.

10   And here, I believe, that's clearly not what the law states.  I

11   believe that cases have uniformly held that the Code allow --

12   the debtor simply doing what the Code allows him to do does not

13   constitute bad faith even if it provides some sort of advantage

14   in the debtor dealing with its debts and its claims.

15          That's all I wanted to mention for now.  Thanks.

16          THE COURT:  All right.  Ms. Davison?

17          MS. DAVISON:  Yes, hi.  Good morning, Your Honor.

18          THE COURT:  Good morning.

19          MS. DAVISON:  I guess, Your Honor, by way of

20   background -- and Mr. Pandurangi did touch on some of this, but

21   I just want to give you a little more background on this

22   dispute.

23          THE COURT:  Right.

24          MS. DAVISON:  Heather is the debtor's former spouse.

25   They were divorced less than two years ago.  The circuit court

1   order granting their divorce was entered in November of 2018.

2   Shortly after the divorce, the debtor took certain criminal

3   actions against my client which prompted her to seek and be

4   granted a two-year family abuse protective order by the

5   Arlington County Juvenile Domestic Relations Court.  The debtor

6   appealed that protective order, and the Arlington County

7   Circuit Court upheld it.  And Judge Newman, in that case,

8   awarded my client attorneys' fees in connection with what he

9   deemed to be the debtor's frivolous appeal of the protective

10  order.

11          My client then also sought full custody of the

12  debtor's three minor children because of the debtor's menacing

13  behavior.  And in January of 2020, the Arlington County Circuit

14  Court entered a custody order which awarded my client full

15  custody of the three children and also about 130,000 dollars in

16  attorneys' fees in connection with the cost of the litigation.

17          So on account of these two awards, my client is, by

18  far, the debtor's largest creditor.  In my opinion, these two

19  awards are pursuant to overwhelming case law in this circuit

20  and nationally, clear domestic support obligations.

21          But I do want to make clear that the debtor pays no

22  traditional child support or alimony.  His only current

23  monetary obligation, outside of those awards, are to reimburse

24  my client for thirty-five percent of monetary medical and

25  activity costs, and that's pursuant to their marital settlement

1  agreement.

2          So the debtor is seeking to convert his Chapter 7 case

3  to Chapter 13.  His motion just says he has a right to do so

4  under 706 of the Bankruptcy Code because the case has not been

5  converted.

6          Your Honor, in 2007, the United States Supreme Court

7  weighed in on a pretty similar issue in Marrama v. Citizens

8  Bank of Massachusetts.  In Marrama, the debtor failed to

9  disclose the value of his principal asset, which was a home,

10  and then moved to convert his case from Chapter 7 to Chapter 13

11  to avoid the Chapter 7 trustee seeking to liquidate that asset.

12          The debtor said it was just a scrivener's error, but

13  the bankruptcy court said there's no "oops" defense to the

14  concealment of assets, and he denied the debtor's motion to

15  convert.  The bankruptcy court's decision was upheld by the

16  First Circuit and the U.S. Supreme Court.

17          And the Supreme Court did a pretty thorough analysis

18  of 706 and found that the purpose of generally allowing a

19  Chapter 7 debtor to convert to Chapter 13 is the debtor should

20  be given an opportunity to repay creditors, should they find a

21  way to do so.  And then the Supreme Court held, quite broadly,

22  despite Mr. Kiriakou's assertion in his response, that the

23  Bankruptcy Code is for honest but unfortunate debtors, and that

24  a debtor who acts in bad faith may forfeit certain rights under

25  the Bankruptcy Code, including, specifically, the right to

1  convert to Chapter 13.

2          Your Honor, here the debtor is neither honest nor

3  unfortunate.  Instead, we have a debtor who filed bankruptcy

4  schedules that were rife with errors, omissions, misstatements,

5  and outright lies.  He's amended them approximately five times,

6  I think it may be six by now, most recently last week, nearly

7  four months after the petition date was filed, although there's

8  no changed circumstances other than the federal complaint that

9  he filed which Mr. Pandurangi mentioned.  And yet the schedules

10 are still deficient.

11         Your Honor, he initially failed to list over 30,000

12 dollars in annual income he earns through a single-member LLC.

13 He still says he only makes 110,000 dollars a year, despite the

14 fact that his 2018 marital settlement agreement provides that

15 he makes about 140,000 dollars a year.

16         He claims no income related to book sales, even though

17 he just published a book in -- I think it was November of 2019.

18 He claims no income related to giving speeches, writing

19 articles, consulting, or selling art, all of which he

20 advertises on his personal website.  And he also solicits

21 donations from the public online because -- basically to

22 support what he calls his whistleblowing efforts.

23         Your Honor, in his schedules he initially failed to

24 list his Vespa, multiple valuable pieces of art, his 500,000-

25 dollar life insurance policy.  He didn't list his residential

1  list until his last iteration of his schedules.  And I note he

2  still hasn't added his landlord as a noticed party to the case.

3        He failed to list his ongoing domestic support

4  obligation to reimburse Ms. Kiriakou for medical expenses for

5  their children.  He failed to list various legal actions

6  instituted by and against him.  He appealed the custody order

7  and paid 21,000 dollars to counsel just prior to the petition

8  date.  In Arlington County, he had criminal charges pending

9  against him when he filed his petition for "revenge porn" which

10  he recently entered a guilty plea to.

11        Despite having litigated the protective order matter,

12  the custody matter, the criminal matter, he doesn't disclose

13  any pre-petition legal fees paid in the few months prior to his

14  petition date nor are any of his counsel's creditors in the

15  case.

16        Your Honor, I think, notably, on June 12th, 2020, he

17  filed amended schedules listing claims against my client, her

18  employer, Northrop Grumman, and an Arlington County police

19  detective, and he lists just an EDVA district court case

20  number.  And in fact, he had filed a federal court action for

21  pre-petition claims of malicious prosecution, defamation,

22  violation of constitutional rights, and intentional infliction

23  of emotional distress.

24        Your Honor, I mean, Mr. Pandurangi claims that he

25  didn't know that he had to disclose these amounts, but by that

1    weekend, his counsel had given interviews in the press about

2    the case.  And I know in the response, Mr. Pandurangi makes

3    points that, well, my client wouldn't have even known about

4    this case if we hadn't disclosed it, as if he deserves an award

5    for disclosing it after he filed it.

6           So Your Honor, I mean, setting aside that these causes

7    of action clearly belong to the Chapter 7 Trustee and the

8    debtor lacks standing to bring them, his failure to disclose

9    these causes of action until the case was filed is just

10   breathtakingly reckless.

11          Your Honor, in his response, Mr. Kiriakou used the

12   "oops" defense that was rejected in Marrama.  His counsel says,

13   well, the debtor didn't know he had to disclose these claims.

14   And I'd like to point out, the Supreme Court in Marrama notes

15   that hundreds of thousands of individuals file Chapter 7

16   petitions each year and each of them are required to read the

17   bankruptcy dockets that they submit, under penalty of perjury,

18   and make a good-faith after to complete them.

19          And Your Honor, compared to the average debtor, this

20   is a quite sophisticated debtor.  In the federal complaint he

21   recites that he was a senior counterterrorism officer in the

22   CIA.  He was a senior investigator on the Senate Foreign

23   Relations Committee.  He's authored four bestselling books for

24   which he's won various awards.  But when he reads bankruptcy

25   schedules that ask, do you have any claims against anyone, just

1    a few weeks before he files a thirty-one-page complaint in

2    federal court, he says, no.  And now his defense is, oops, I

3    didn't understand the question I was being asked, even though

4    hundreds of thousands of debtors understand just fine.

5           Your Honor, to the extent he offers an "oops" defense

6    to any other number of his omissions or mistakes, it's really

7    worth reflecting for a moment that this debtor filed a

8    voluntary Chapter 7 petition.  He availed himself of this

9    court.  The burden was on him to make complete and accurate

10   disclosures.

11          His brief, in response to my client's objection, would

12   seem to suggest that he believes that the burden is on his

13   creditors to ensure he's truthful in his bankruptcy papers.  He

14   basically says, yes, I left some things off, but as soon as

15   they were specifically pointed out to me, I updated them.

16          And Your Honor, that is just not the standard.  It

17   cannot be incumbent on his largest creditor to hire counsel and

18   to spend legal fees briefing the deficiencies in his schedules.

19   And I point out too that the updates to his schedules and

20   statements are purely reactionary.  I've raised certain

21   discrepancies that he can't deny, so he's updated his

22   schedules, but he doesn't seem to have actually made a

23   good-faith effort to complete them.

24          Illustratively, throughout the federal complaint, the

25   debtor notes that he's a current shareholder of Northrop

1   Grumman.  He says it many times.  He holds his status as a

2   shareholder of Northrop in such esteem that he deemed it

3   necessary to send photos of his ex-wife in her underwear to

4   each of the employers, officers, and directors.  He calls

5   himself a whistleblower with respect to being a shareholder of

6   Northrop Grumman.  And this is the crime for which he was

7   allegedly maliciously prosecuted.  But if you look at Schedule

8   A, the bankruptcy schedules ask if he holds any stock in a

9   publicly-traded company, and the debtor still says no.

10         Your Honor, strangely, and perhaps I think most

11  egregiously, the debtor does not even try to address in his

12  response the fact that he essentially fudged his means test

13  calculation in order to feign Chapter 7 eligibility.  He has no

14  children in his custody.  He pays no regular child support.

15  But in the first three iterations of the means test he filed,

16  he took deductions for a three-person household, plus

17  deductions for childcare, plus deductions for court-ordered

18  payments for the medical expenses.

19         He could have originally filed a Chapter 13 petition.

20  But instead he claimed, in three separate filings, that he did

21  not qualify for Chapter 13.  He maintained he didn't qualify

22  for several months until just last week, that is, until he

23  decided he wanted to be in Chapter 13.  And now he remembers

24  that he lives alone and submits that he does qualify to be a

25  Chapter 13 debtor, in fact.

Colloquy                                                        13

1      Your Honor, one cannot just make that change and still
2  assert that he filed his bankruptcy petition in good faith.  So
3  I appreciate the Court's indulgence.  It's taking me awhile to
4  get here, but in my brief, I offer three reasons that the
5  debtor now finds it preferable to be in Chapter 13: first,
6  because he now realizes that he lacks standing to bring the
7  federal complaint.  He's hoping that if the case converts he'll
8  be in possession of his assets again.

9      Second, having been challenged by my client with
10  respect to the domestic support obligations, he's hoping to be
11  able to pay her pennies on the dollar and take advantage of the
12  super discharge provisions of Chapter 13 instead of having
13  those court orders clearly fall under the nondischargeability
14  provisions in Chapter 7.

15      And third, Your Honor, the debtor basically concedes
16  in his later filings that he's just not eligible for a Chapter
17  7.  A presumption of abuse has arisen.  He's offered no special
18  circumstances why his receiving a Chapter 7 relief would not be
19  abuse of the process.  Your Honor, the debtor is simply not
20  acting in good faith here.

21      So to conclude, Your Honor, in 2013, the debtor was
22  convicted and jailed for leaking classified information.  Last
23  year his ex-wife was awarded a family abuse protective order
24  against him.  Earlier this year he lost custody of his
25  children.  None of these acts, on their own, certainly deprive

 1  the debtor of his right to be a debtor under the Bankruptcy

 2  Code, but they do inform us because bankruptcy is part of a

 3  pattern of abuse.  The debtor is an abuser, and so it's

 4  consistent that he'd abuse the bankruptcy process and attempt

 5  to use it as both a sword and a shield against his ex-wife

 6  who's really the only significant creditor.

 7          Your Honor, in Marrama, the United States Supreme

 8  Court found that the debtor's failure to disclose the value of

 9  his principal asset was sufficient to deny his motion to

10  convert.  Courts, applying that case, including in this circuit

11  and in this district and in this court, have found a wide range

12  of bad acts sufficient to deny a motion to convert.

13          And so here I would offer that the debtor's actions go

14  so far beyond the failure to disclose or undervalue one asset.

15  And I'd ask the Court to find that there's bad faith here and

16  that, consistent with Supreme Court precedent, his motion to

17  convert should be denied.

18          MR. PANDURANGI:  Yes, Your Honor, may I respond?

19          THE COURT:  Yes, please respond, Mr. Pandurangi.

20          MR. PANDURANGI:  Yes.  So going first to the case of

21  Marrama v. Citizens Bank, clearly the Court there held that

22  there's no absolute right to convert to 13, and it is within

23  the Court's authority to deny a conversion if there is a

24  finding of bad faith.

25          Now, in the case, the Supreme Court stated that

1   neither 706 nor 1307(c) limits a court's authority to take

2   appropriate action in response to fraudulent conduct by the

3   plaintiff colitigant who has demonstrated that he is not

4   entitled to seek the relief that is available to the typical

5   debtor.

6           And as counsel pointed out, in that case the debtor

7   had transferred his property into a trust for no consideration

8   several months prior to the filing of the Chapter 7 petition.

9   And he had represented a value at zero for the trust.  And

10  later he actually admitted that the purpose of the transfer was

11  to protect the property from his creditors.  And he only filed

12  a notice of conversion to Chapter 13 after the trustee had

13  indicated his intent to go after the property.

14          So just on those facts, it's very much dissimilar to

15  what has happened here.  The debtor here -- well, the debtor

16  here did not misrepresent the value of any property.  He just

17  did not realize that these claims were property of the estate.

18          And of course, according to the creditor, the claims

19  are not even meritorious, they're not even based in facts that

20  would establish her liability, so it's hard to see how they can

21  assert that and also assert that it is the largest asset of the

22  estate that he was concealing.

23          I would also just point out that the creditor -- or

24  counsel brings up the various property that was not initially

25  disclosed and has just recently been disclosed on the amended

1    schedules of the debtor.  Most of this property, including the

2    paintings, and I believe a coin collection, were all mentioned

3    in the marital settlement agreement that was entered into in

4    2018.

5           So as the creditor rightly points out, the debtor has

6    gone through a lot in the last year or two, including criminal

7    prosecutions, instigated by the creditor, and the creditor's

8    claim, the protective order litigation, the custody litigation

9    in which he lost custody of his three children in January of

10   this year.  And then he's, lastly, filed at the end of March,

11   which was right when the COVID-19 pandemic was also hitting in

12   full force.  So there was a lot of uncertainty around his job

13   as well.

14          So I think, under normal circumstances, the lack of

15   disclosures and the leaving off of certain property, such as

16   the Vespa scooter and the painting, could be considered some

17   sort of bad faith, but I think there's a very reasonable

18   argument here that it was simply his lack of focus and

19   attention on the case and what needed to be included.

20          And now the creditor is asserting that the conversion

21   to 13 is a way of him getting out of paying his creditors when

22   in fact none of the claims, you know, the civil claims that

23   have been filed against the creditor, Northrop Grumman, and

24   John Bamford, none of those are exempt.

25          So any awards or any settlement, it seems, would be

1   paid into the plan and perhaps would be enough to pay off one

2   hundred percent of all of the claims of all creditors in the

3   case.  So he certainly has no intention of avoiding payment to

4   creditors in a conversion to 13.

5           I would also point out, in Chapter 13 there is a

6   requirement that a plan is proposed in good faith before it is

7   confirmed, so certainly the Chapter 13 Trustee, Mr. Gorman, and

8   the creditor would also have opportunities to review the plan

9   and object to it if they still feel that it is not paying what

10  it should be paying under the Code.

11          And if the case is converted to 13, the creditor will

12  still be able to continue with the adversary proceeding, the

13  motion for relief from stay -- or well, possibly not the motion

14  for relief from stay, but also the 2004 examination, which

15  would allow the creditor to actually require the debtor to

16  produce any documents that may support their assertion that

17  he's still failing to disclose income such as income from book

18  sales, art sales, donations to his website.  Meanwhile, there's

19  no basis for saying that any of that income exists, but

20  certainly it could be discovered through a 2004 examination.

21  So the creditor really would not be giving up anything if this

22  case was converted to Chapter 13.

23          So yeah, I would just request that the Court allow the

24  debtor to convert his case and then the Court and the creditor

25  and the trustee will have plenty of opportunity to continue to

 1   make sure that he is proceeding in good faith.  Thank you.

 2           THE COURT:  Ms. Davison, do you have any additional

 3   arguments to support your motion to extend time to file a

 4   motion to dismiss?  I mean, the two motions are clearly

 5   related, but if you have any other comments to make I'll hear

 6   them now before I form a ruling.

 7           MS. DAVISON:  Sure, Your Honor.  I mean, my motion to

 8   extend time, obviously if you grant the debtor's request to

 9   convert to 13, would really be moot.

10           THE COURT:  Okay.

11           MS. DAVISON:  But to the extent that you do sustain my

12   objection, Your Honor, I would just say that Bankruptcy Rule

13   1017(e) provides that a motion to dismiss for abuse under

14   707(b) or (c) may only be filed within sixty days after the

15   petition date.  Here the presumption of abuse only arose after

16   the debtor amended his schedules, and in fact, just as of last

17   week, the debtor now concedes there's a presumption of abuse

18   and offers no special circumstances as to why he should get

19   Chapter 7 relief.

20           So the sixty-day time limit, which I think is imposed

21   basically because a Chapter 7 debtor would typically receive a

22   discharge after about sixty days, it's just not reasonable in

23   this case.  My client has certainly not failed to act

24   diligently.  Instead, the debtor just continues to reveal how

25   abusive his filings are.

1        I mean, Your Honor, candidly, I feel pretty strongly

2   that it shouldn't be my client's burden to continue to police

3   this bankruptcy, and I would, I guess, offer that as an

4   additional argument in support of my objection to the motion to

5   convert.

6        But so far the U.S. Trustee and the Chapter 7 Trustee

7   have not taken any position.  I've kept them informed.  But

8   unless the U.S. Trustee's office is going to move for the case

9   to be dismissed for abuse, I would request that my client be

10  given an opportunity to do so, and so I'd submit that there is

11  good cause for such extension.

12       THE COURT:  All right.  Mr. Pandurangi, I'll hear your

13  response to Ms. Davison's comments.

14       MR. PANDURANGI:  Yes, Your Honor, in the event that

15  the Court decides to sustain the objection to the motion to

16  convert, I think that it is clear that the debtor is over the

17  presumption of abuse in Chapter 7 and that is a significant

18  factor in him converting to the 13.  So I think, one way or

19  another, that the Chapter 7 would be dismissed, so we don't

20  necessarily object to extending the deadline for the creditor

21  to file a motion to dismiss the case.

22       THE COURT:  All right.  I'm prepared to make a ruling

23  on the motion to convert.  It is clear, based on the schedules

24  and all of the amendments thereto, that this debtor failed to

25  disclose assets on his original schedules.  And the lack of

Colloquy                                                         20

1  focused argument that counsel for the debtor has made is
2  completely unconvincing.  There is no doubt in my mind that Mr.
3  Kiriakou knew what he was omitting from the schedules, and it
4  appears that these matters only came to light because the
5  creditor was involved.
6          I understand that this debtor is not eligible for
7  Chapter 7.  I also believe that the debtor knew this when he
8  filed the case.  The first means test simply was inaccurate in
9  a very, very deliberate way.
10         The super discharge in a Chapter 13 is under the Code,
11 but in this case, I think it would be -- especially because I
12 find that there is bad faith on the part of the debtor, it
13 would be an injustice to allow this debtor to take advantage of
14 a super discharge.
15         For the reasons that I've stated, I'm going to deny
16 the motion to convert, based on the Marrama standard, and I'm
17 going to grant the creditor's motion to extend the time to file
18 a motion to dismiss in this case.
19         Ms. Davison, how much time do you think you're going
20 to need?
21         MS. DAVISON:  Your Honor, I believe in my motion I
22 asked for ninety days.  I probably don't need that much
23 anymore, but the creditor is dealing with a lot because she's
24 defending against this other case.  So it's --
25         THE COURT:  All right.

                              **Colloquy**                                21

 1              MS. DAVISON:  Sixty days is probably enough, yes.

 2              THE COURT:  All right.  Then I'm going to give you

 3    until September 25th to file --

 4              MS. DAVISON:  September 25, okay, thank you.

 5              THE COURT:  -- to file your motion to dismiss, and I

 6    want you to prepare both orders, the order denying the debtor's

 7    motion to convert and the order granting your motion to extend.

 8              MS. DAVISON:  Okay, great.  So September 25th, just to

 9    clarify, would be my deadline to file a motion?

10              THE COURT:  Yes, that's correct.

11              MS. DAVISON:  Thank you.

12              THE COURT:  All right.

13          (Whereupon these proceedings were concluded at 10:42 AM)

14

15

16

17

18

19

20

21

22

23

24

25

1                           **I N D E X**

2

3

4   RULINGS:                                      PAGE    LINE

5   Motion to convert case from Chapter 7          20      15
    to Chapter 13 is denied.
6
    Motion to extend time to file motion           20      17
7   to dismiss is granted.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1        C E R T I F I C A T I O N

2

3              I, Sharona Shapiro, the court-approved transcriber, do

4    hereby certify the foregoing is a true and correct transcript

5    from the official electronic sound recording of the proceedings

6    in the above-entitled matter.

7

8    *Sharona Shapiro*

9                                              July 17, 2020

10   _____       _____

11   SHARONA SHAPIRO                      DATE

12   AAERT Certified Electronic Transcriber CET-492

13

14

15

16

17

18

19

20

21

22

23

24

25